```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                   :
SONNY ELI,
                                   :
               Petitioner,
                                   :    MEMORANDUM DECISION
          - against -
                                   :    05 Civ. 2703 (DC)
CRAIG APKER, Warden, in his
official capacity,                 :

               Respondent.[1]      :

- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**   SONNY ELI
                  Petitioner pro se
                  FCI Otisville Satellite Camp
                  P.O. Box 1000
                  Otisville, NY  10963-1000

                  MICHAEL GARCIA, ESQ.
                  United States Attorney for the
                      Southern District of New York
                  Attorney for Respondent
                     By:  Lara Eshkenazi, Esq.
                          Assistant United States Attorney
                  One St. Andrew's Plaza
                  New York, NY  10007

**CHIN, D.J.**

Federal inmate Sonny Eli petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contesting a policy of the Bureau of Prisons ("BOP") that limits prisoner placement in a Community Corrections Center ("CCC") to the lesser of six months or the last ten percent of a prisoner's sentence. Eli claims that the policy is unlawful, and requests that the BOP

---

[1] Eli originally brought this claim against Fredrick Menifee in his capacity as warden of the Federal Correctional Institution in Otisville. Craig Apker, Menifee's successor as warden, is automatically substituted as respondent in this action. See Fed. R. Civ. P. 25(d).

be directed to use its pre-December 2002 designation policy to determine his eligibility for CCC placement. For the reasons set forth below, the petition is denied.

## BACKGROUND

### A. Petitioner's Sentence

Following a guilty plea, Eli was convicted in the Eastern District of Pennsylvania of conspiracy to commit mail fraud. He was sentenced on March 15, 2004,[2] to twenty-four months' imprisonment and three years' supervised release. (Declaration of Les Owen dated June 2, 2005 ("Owen Decl."), Ex. B). The BOP designated Eli to the Federal Prison Camp in Otisville, New York, and he began serving his sentence on June 21, 2004. (Owen Decl. Ex. A). He had one day of jail credit at that time. (Id.). His projected release date with good time credit is March 17, 2006. (Id.).[3]

### B. BOP Placement Policy

Eli's petition challenges the manner in which BOP has chosen to exercise the discretion afforded it by 18 U.S.C. §§ 3621(b) (governing facility designation) and 3624(c) (addressing pre-release placement of inmates to prepare for community re-entry). Together, these statutes grant the BOP the power to

---

[2] This is the sentencing date that appears on the judgment (Owen Decl. Ex. B) and in the Government's Return dated June 17, 2005. Eli's original petition, however, lists the date of sentencing as April 15, 2004.

[3] This date assumes Eli will receive all good time credit available. If all of Eli's good time credit is disallowed, his prison term will expire June 19, 2006. (Owen Decl. Ex. A).

-2-

assign inmates to prison facilities, including CCCs.

> Section 3621(b) provides, in pertinent part:
>
> The [BOP] shall designate the place of the prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] . . . that the [BOP] determines to be appropriate and suitable, considering --
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence --
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The [BOP] may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

> Section 3624(c) provides, in pertinent part:
>
> The [BOP] shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to

-3-

> exceed six months, of the last 10 per centum
> of the term to be served under conditions
> that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the
> prisoner's re-entry into the community. The
> authority provided by this subsection may be
> used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).

The BOP has interpreted Sections 3621(b) and 3624(c) three different ways in the last three years, resulting in three different CCC placement policies. The history of these policy shifts has been extensively chronicled by several courts considering petitions similar to Eli's. See, e.g., Moss v. Apker, 376 F. Supp. 2d 416, 418-19 (S.D.N.Y. 2005); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 367-70 (E.D.N.Y. 2005); Bialostok v. Apker, No. 05 Civ. 2698 (RJH), 2005 WL 1946480, at **1-4 (S.D.N.Y. Aug. 12, 2005); Levine v. Menifee, No. 05 Civ. 1902 (RCC), 2005 WL 1384021, at **2-4 (S.D.N.Y. June 9, 2005); Wiesel v. Menifee, No. 04 Civ. 9681 (DAB), 2005 WL 1036297, at **1-3 (S.D.N.Y. May 2, 2005); Drew v. Menifee, No. 04 Civ. 9944 (HBP), 2005 WL 525449, at **1-3 (S.D.N.Y. Mar. 4, 2005). Accordingly, this Court will only briefly discuss the history of these changes before addressing the most recent policy, which is at issue here.

Under the policy in place prior to December 2002 (the "pre-December 2002 Policy"), the BOP interpreted Sections 3621(b) and 3624(c) to allow placement of eligible inmates in such facilities for the last six months of their sentences, even if that period exceeded the last ten percent of their sentences. See Zucker v. Menifee, No. 03 Civ. 10077 (RJH), 2004 WL 102779,

-4-

at *2 (S.D.N.Y. Jan. 21, 2004); Cato v. Menifee, No. 03 Civ. 5795 (DC), 2003 WL 22725524, at *2 (S.D.N.Y. Nov. 20, 2003).

In December 2002, the Office of Legal Counsel of the Department of Justice issued a memorandum characterizing the pre-December 2002 Policy as "unlawful." (See Memorandum from Federal Bureau of Prisons, U.S. Department of Justice, to Chief Executive Officers (Dec. 20, 2002), attached as Ex. A to Eli's petition of February 10, 2005). Shortly thereafter, the BOP adopted a new policy (the "December 2002 Policy"), according to which inmates would be placed in CCCs for the lesser of the last ten percent or the last six months of the inmate's term of imprisonment. See Community Confinement, Final Rule, 70 Fed. Reg 1659, 1659 (Jan. 10, 2005) (to be codified at 28 C.F.R. pt. 570). The only inmates affected by this policy shift were those sentenced to terms of fewer than sixty months, but for those inmates, the policy shift meant a substantial change in the conditions of their confinement. See Bialostok, 2005 WL 1946480, at *3 (explaining change in inmates' sentences under each policy).

The December 2002 Policy was subsequently challenged by many inmates who would have been eligible for earlier CCC placement under the pre-December 2002 Policy, and was eventually ruled invalid by both the First and Eighth Circuits, which found that the December 2002 Policy controverted the plain meaning of Section 3621(b). See Goldings v. Winn, 383 F.3d 17, 23-27 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842, 846-47 (8th Cir. 2004). Several district courts in the Southern and Eastern

Districts of New York, including this Court, also found the December 2002 Policy unlawful on this and other grounds. See Pimintel, 367 F. Supp. 2d at 368 (collecting cases).

In response to these and other rulings, the BOP adopted the current CCC placement rule (the "February 2005 Rule").[4] Under this rule, the BOP "explicitly recogniz[es] its discretion under § 3621(b) to designate federal inmates to CCCs . . . [and has chosen] to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." Wiesel, 2005 WL 1036297, at *3 (citing 69 Fed. Reg. 51213 (Aug. 18, 2004)) (internal quotation marks omitted).

---

[4] The February 2005 Rule is codified at 28 C.F.R. §§ 570.20 and 570.21. It became effective on February 14, 2005.

28 C.F.R. § 570.20 provides, in pertinent part:

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community . . .

28 C.F.R. § 570.21 provides, in pertinent part:

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time frames only when specific Bureau programs allow greater periods of community confinement as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. § 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. § 4046(c)).

While "indistinguishable in its effect on prisoners from the December 2002 Policy," Moss, 376 F. Supp. 2d at 420, the February 2005 Rule rests upon a different interpretation of Sections 3621(b) and 3624(c). Whereas the December 2002 Policy interpreted these sections in a manner that stripped the BOP of all discretion to place inmates in CCCs prior to the last ten percent of their sentences, not to exceed six months, the February 2005 Rule adopted an opposite position, acknowledging that the BOP had discretion to place inmates in CCCs prior to the date specified by Section 3624(c), but asserting that it would categorically exercise that discretion to decline to place inmates in CCCs before the last ten percent of their sentences, not to exceed six months. See February 2005 Rule, 70 Fed. Reg. at 1661.

## C. BOP's Policy as Applied to Petitioner

On January 19, 2005, in accordance with the December 2002 Policy in place at the time, Eli was recommended for CCC placement for the last ten percent of his sentence, to begin on or after January 14, 2006. (Program Review Report, January 19, 2005, Owen Decl. Ex. E.). This is the same placement date Eli would have received under the February 2005 Rule. Under the Pre-December 2002 Policy, Eli would have been eligible for CCC placement on or about September 17, 2005, six months before his projected release date.[5]

---

[5] This date was calculated by subtracting six months from Eli's projected release date of March 17, 2006. (Owen Decl. Ex. A). Eli's original petition, relying in apparent error upon a

**D.      Procedural History**

On February 10, 2005, Eli petitioned this Court for an injunction challenging the December 2002 Policy.  Four days later, on February 14, 2005, BOP began following the February 2005 Rule.  Eli consequently filed a motion dated April 29, 2005, requesting a "decision and order on an expedited basis" and contesting the "legality" of the February 2005 Rule.  On May 23, 2005, the Court ordered that Eli's April 29, 2005, motion be treated as a motion to amend his February 10, 2005, petition to seek habeas relief from the February 2005 Rule.

**E.      The Instant Petition**

In the instant petition, Eli asserts that the February 2005 Rule is unlawful because (1) it is based on an erroneous interpretation of Sections 3621(b) and 3624(c); (2) it was not enacted in accordance with APA guidelines; and (3) as applied to him, it violates his due process rights and the ex post facto clause of the Constitution.  Accordingly, Eli asks that his placement date be reconsidered pursuant to the pre-December 2002 Policy.

---

projected release date of April 17, 2006, asserted that under the pre-December 2002 Policy, Eli would have been eligible for CCC placement on or about November 14, 2005.  (Pet. at 2-3).

**DISCUSSION**

**A.   The February 2005 Rule**

The February 2005 Rule has already been the subject of numerous challenges, with mixed results. To date, no circuit court has ruled on the policy, and there is a split among the district courts that have considered the issue. A number of district courts have upheld the February 2005 Rule. See Charboneau v. Menifee, No. 05 Civ. 1900 (MBM), 2005 WL 2385862 (S.D.N.Y. Sept. 28, 2005); Bialostok, 2005 WL 1946480; Gentzler v. United States, No. 05 Civ. 4521, 2005 WL 1773684 (S.D.N.Y. July 27, 2005); Moss, 376 F. Supp. 2d at 416 (same); Troy v. Apker, No. 05 Civ. 1306, 2005 WL 1661101 (S.D.N.Y. June 30, 2005); Levine v. Menifee, 2005 WL 1384021; Levine v. Apker, No. 05 Civ. 3472, 2005 WL 1417134 (S.D.N.Y. May 20, 2005); Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548, 551 (E.D.N.Y. 2005); Wiesel, 2005 WL 1036297. Others have found the rule to be invalid. See Pimintel, 367 F. Supp. 2d at 365; Drew, 2005 WL 525449; Baker v. Willingham, No. 3:04 CV 1923 (PCD), 2005 WL 2276040 (D. Conn. Sept. 19, 2005); United States v. Paige, 369 F. Supp. 2d 1257 (D. Mont. 2005); Cook v. Gonzales, No. Civ. 05-09-AS, 2005 WL 773956 (D. Or. April 5, 2005); Lesnick v. Menifee, No. 05 Civ. 4719 (JCF), 2005 WL 2542908 (S.D.N.Y. Oct. 11, 2005).

Having considered these cases, as well as the submissions and arguments of the parties, I agree with the decisions of those courts that have upheld the February 2005 Rule, and adopt their reasoning herein. I add only the following

brief comments.

In Lopez v. Davis, the Supreme Court considered a provision of Section 3621 that allowed the BOP to reduce the prison sentences of inmates convicted of nonviolent offenses. 531 U.S. 230, 233 (2001). Pursuant to that provision, the BOP published a rule that categorically denied such sentence reduction to, among others, all inmates who had received a two-level sentence enhancement for possession of a dangerous weapon during the commission of a drug offense. Id. at 233-34. The Court held that in a case where "Congress has enacted a law that does not answer the precise question at issue, all [a court] must decide is whether the Bureau . . . has filled the statutory gap in a way that is reasonable in light of the legislature's revealed design." Id. at 242 (quotation omitted). The Court rejected the notion that the BOP may not make categorical exclusions and may rely only on case-by-case determinations, stating that:

> [E]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority. The approach pressed by Lopez -- case-by-case decisionmaking in thousands of cases a year -- could invite favoritism, disunity, and inconsistency. The Bureau is not required continually to revisit issues that may be established fairly and efficiently in a single rulemaking proceeding.

Id. at 243-44 (citations omitted).

The categorical discretion exercised by the BOP in this

case is indistinguishable from the rule at issue in Lopez. Thus, under Lopez, this Court must first consider whether Section 3621(b) "answer[s] the precise question at issue": whether, as petitioner argues, the BOP is mandated under Section 3621 to make individualized CCC placement determinations. By its terms the statute does not impose any such mandatory obligation. To the contrary, the use of the permissive "may" rather than the mandatory "shall" in the statute indicates that Congress did not clearly express an intent to withhold the BOP's authority to exercise its discretion through the use of categorical rules. See 18 U.S.C. §§ 3621(b) ("The Bureau may designate any available penal or correctional facility . . ., considering --"; "The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.") & 3624(c) ("The [BOP] shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten percent of the term [in community confinement].") (emphasis added); see also Moss, 376 F. Supp. 2d at 423.

Thus, the question is whether the BOP's interpretation reasonably fills in the statutory gap. As one court has found, "[a]t a minimum, the BOP's interpretation . . . cannot be said to be so unreasonable as to overcome the substantial deference accorded the BOP in interpreting a statute that it is charged with administering." Charboneau, 2005 WL 2385862, at *5 (citations omitted); see also Chevron U.S.A., Inc. v. Natural

Res. Def. Council, Inc., 467 U.S. 837, 842 (1984) (explaining that agency's construction receives substantial deference and should be upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute").

Finally, some courts that have invalidated the February 2005 Rule have relied in part on the legislative history of Section 3621. See, e.g., Drew, 2005 WL 525449, at *4 Pimentel, 367 F. Supp. 2d at 375. But the legislative history is ambiguous at best. It states that the BOP is "specifically required to consider such factors as" those listed in 3621(b), but also acknowledges that the Senate Judiciary Committee "does not intend to restrict or limit the Bureau in the exercise of its discretion . . . but intends simply to set forth the appropriate factors that the Bureau should consider in making the designations." S. Rep. No. 98-225, reprinted in 1984 U.S.C.C.A.N. 3182, 3324-25 (emphasis added); see also Charboneau, 2005 WL 2385862, at *5. In any event, resort to the legislative history is unnecessary here, because, under Lopez, the BOP is permitted to exercise its discretion categorically "[e]ven if a statutory scheme requires individualized determinations." 531 U.S. at 233.

Accordingly, petitioner's request for habeas corpus relief on this ground is denied.

**B.   Administrative Procedure Act**

Petitioner also asserts that the February 2005 Rule violates the APA because the rule was not properly promulgated according to the APA's notice and comment procedure. (Pet. at

3). As the February 2005 Rule, in contrast to the December 2002 Policy, was enacted by the BOP pursuant to the proper notice and comment procedures of the APA, Eli's claim that the APA notice and comment requirements were not followed is without merit. See Wiesel, 2005 WL 1036297, at *4; Baker, 2005 WL 2276040, at *7.

### D. **Eli's Ex Post Facto Claim**

Eli argues that the February 2005 Rule violates the ex post facto clause because it amounts to a retroactive increase of the amount of time he must be imprisoned. This argument is rejected. The rule change "does not amount to an increased penalty because it does not have the purpose or effect of enhancing the penalty associated with Petitioner's crime." Charboneau, 2005 WL 2385862, at *6 (quoting Levine v. Menifee, 2005 WL 1384021, at *7). As explained above, the February 2005 Rule is a valid exercise of the BOP's preexisting statutorily authorized discretion to limit CCC placements to the last ten percent of a prisoner's sentence, not to exceed six months. That discretion has always rested with the BOP, and Eli had no right to determine the location of his imprisonment before or after the enactment of the February 2005 Rule. Accordingly, this claim is rejected. See also id.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. This Court finds, however, that Eli has made a substantial showing of the denial of a constitutional right, in that reasonable jurists would find it debatable whether

the petition states a valid claim and whether this Court correctly held that the February 2005 Rule is a proper exercise of the BOP's discretion. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is granted pursuant to 28 U.S.C. §§ 2253(c) and 2255, and Eli may appeal this Court's denial of his petition.

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
October 28, 2005

DENNY CHIN
United States District Judge